It is 171652 In Re LifeWatch Technologies. Good morning. Good morning, Your Honor. This case involves just one issue. Whether the written description of the 136 priority application... At page 6 of the blue brief, you produce a family tree of the relevant patents. Where's that in the record? The family tree is not in the record. We provided that just for the convenience of the court. The history of these patents is very complicated, so this was generated using public payer. In the blue brief at 30, you say that the PTAB correctly recited this court's precedent, but it then applied its own inventor recognition standard. But it appears to me that the PTAB merely determined whether LifeWatch had possession of the claimed invention as required by our precedent. Can you show me specifically where the PTAB required more than our precedent demands? The PTAB's decision begins by reciting the correct standard, but then as you move through the decision...  The law is recited correctly about possession and the binding precedent there. I think the most clear statement is on page 11 of the PTAB's decision, and it's italicized there. What the board says is the patent owner did not demonstrate the inventor's new and recognized misparts and italics as part of their invention, that the monitoring apparatus could be used by the patient as a general purpose phone for making phone calls to any desired party. That's probably the most clear articulation of that, but there's some other places where inventor recognition is referenced. Appendix 13 is one, and then also Appendix 12, where there's a discussion of whether the inventors possessed the concept. That seems to refer not to whether or not the POSA would recognize that a multi-purpose personal data accessory was disclosed, but rather whether the inventors had this concept in mind. Did Dr. Bims ever say that the inventors were in possession or something like that of the 136 applications non-health monitoring function? So what he says is that the person of ordinary skill would recognize that the inventors were in possession of a device that was capable of performing the non-health monitoring function. So yes, I believe that starts at paragraphs, I want to say 52 of his declaration. 52? Right, correct. 51 or 52. His declaration starts at Appendix Page 1746. Yeah. And then the paragraphs in question, where I think this is most clear is... I'm looking at 52. It says a person of ordinary skill in the art would have understood that the cellular monitor 12, which communicates with the monitoring station over the public telephone network, could have likewise communicated over the public telephone network with other cellular landline phones. And then it goes on to paragraph 54, where he states, for at least the foregoing reason is my opinion that the POSA in March 1999 would have understood that the GIVA patent described a cellular health monitor that could be used for health monitoring, as well as a general purpose cellular telephone. The cellular telephone circuitry components of the cellular health monitor allow it to receive cellular telephone calls from any cellular phone or landline phone over the public telephone network. And what the board says about that is it recognizes he stated that it could be used as a cellular phone, but does not state that it was used for this purpose, nor that the inventors recognized it as such. That's correct, Your Honor. The board draws a would-be-could distinction. That does not apply here in the context of this claim, which is for a multipurpose personal data accessory, that the claim construction simply requires to have functionalities. It's a functional claim limitation, in other words. So the device doesn't actually have to be spelled out in the specification that it was used for each particular purpose. It simply has to have that functionality. So you're saying it's inherent, but how do you reconcile your inherency arguments with our precedent that says the specification must disclose the invention? Well, that's one of the places where inherency can fill a gap. In a situation like this, because the specification discloses a device that is capable of performing these functions, and that a person of ordinary skill would necessarily know would be capable of performing these functions, and that's what Dr. Wimms testifies to. Well, I'm looking at Autotext v. BMW. It is the specification, not the knowledge of a person skilled in the art, that must supply the novel aspects of the invention. Autotext v. BMW? Yeah. Us, in 2007. There's another case, Bob, stating that the relevant test is whether or not what the person of ordinary skill would know about what's disclosed in the specification. And so in a situation like this, where the component that the board says is not spelled out and disclosed expressly, was something that was known to a person of ordinary skill in the art. This is not the novel aspect of the invention here, the non-health monitoring calls. The novel aspect was using this general-purpose device for making health-monitoring-type communications. And the person of ordinary skill would have known that that general-purpose device was capable of those other types of communications. And so in that situation, you don't need to spell out in the text of the specification those conventional known functionalities that the person of ordinary skill is already going to know about. That's the same issue with the Godel v. Sugana, which is the case that the board relies on. In that case, it's a 166-amino acid pre-sequence for this human fibroblast interferon. And what the court said in that case is that using that pre-sequence, the person of ordinary skill might have found it obvious to get to the mature sequence, but there were deficiencies in the knowledge base of the person of ordinary skill in the art. It was not a known, that mature sequence. Yes, the person of ordinary skill could have figured it out. They could have gotten there, but they didn't know it. Here, it's a bit different, because a wireless circuitry for a cellular phone, the person of ordinary skill, like Mr. Bims, looking at that, is going to know, just looking at it, I can use this for a general-purpose cellular telephone call. What was novel was using that device for the specific health monitoring-type functionalities. And there's no dispute that that latter point, that using it for the health monitoring, was in fact disclosed in the specification. So it's sort of an unusual situation where the component that was known to oppose it was what the board found was not adequately disclosed in this case. I'd like to turn to the express fact finds of the board. On pages 5 and 6 of the board's decision, the board states that, adopts the testimony of Dr. Bims, stating that LifeWatch's expert Dr. Bims testified in his declaration that the Cellular Monitor 12, described in the 136 application, had the cellular and wireless circuitry that enabled it to be used as a cellular telephone. Dr. Bims' testimony is supported by sound scientific reasoning and factual evidence. And the board goes on to the next page, to state that we find Dr. Bims' testimony to credibly establish that the monitoring apparatus of the 136 application could be used to make and receive cellular phone calls for other non-health monitoring purposes. Those fact findings, by themselves, should have been enough under this Court's standard for written description, which requires that the description adequately describe the invention, such that it reasonably conveys to those of skill in the art that the inventor had possession of the claimed subject matter as of the filing date. And because of those fact findings, there's no factual dispute here that's needed to be resolved in order to find in favor of LifeWatch that this application should have been allowed over these rejections. I'm going to talk about the argument the Patent Office makes in its brief, which pertains to a passage on page 13 of the board's decision. And the Patent Office says that instead of a legal issue about the standards of the written description requirement, this case turns on this fact finding on page 13. Well, written description is a fact question. It is. But when there's an error in the legal standard that the tribunal below applies, then that would be a legal error. So our position is that the fact findings are established here that establish the correct legal standard that LifeWatch's application met the filing date, but there was an error in the law. The case is access data is the case for that holding. The sentence that the board relies on, first of all, or the director relies on, excuse me, on page 13, is not actually a fact finding. It states instead that the 878 patents mentioned of the 136 application, the discussion of the 878 invention, is consistent with the conclusion that the 136 application does not describe a, quote, general purpose cellular telephone, end quote. So the board states there that this disclosure and the actual patent would be consistent with such a conclusion, but doesn't go the next step to actually draw the conclusion that the 136 application does not disclose a cellular phone. And also in the context of that page, what the board is talking about is the general purpose component, which is once again the non-health monitoring functionality, not the cell phone itself. So I think it's a bit of a stretch to say this is a fact finding, but even if the court agrees with the director that it is a fact finding, it does not matter because the claim is directed to a multi-purpose personal data accessory, which the claim construction from the board, which is undisputed, and which the patent specification spells out, is not limited to a cellular phone. It's any device that can, general purpose device, a PDA, or the patent specification at column five says, or the like, it could be some other general purpose device. It's not limited to a cellular phone. So even if this is found to be a fact finding, the earlier fact findings, which state the opposite, are sufficient and it's in fact relevant because all that's needed is the wireless circuitry, for which there's no dispute. There's disclosure in the earlier application. Thank you. If there are no questions, I'll present. May I please report? As my opposing counsel said, there's only one issue, whether the disclosure from the 99 application sufficiently shows that the inventors had possession of the invention, which was later claimed in a 2004 continuation application. A continuation, sorry, continuation in part application. A continuation in part application is a patent filing that claims priority, but also adds a certain amount of new matter. Well, can you just, I mean, I think this is really about the legal standard we're using. Sure. And your friend cited page five and the board's finding that Dr. Bins testified, he described the 136 application as cellular and wireless circuitry that enabled it to be used as a cellular telephone. So the board makes a finding that there was enough disclosure in the specification for the 136 for a person skilled in the art or anyone to understand, or said another way that the inventor had possession of something that could be used as a cellular phone. Right. Is that wrong? And if so, why isn't that sufficient? So it's not wrong that the board and Dr. Bins said that the innards of a cell phone communication was there, but the only thing that was disclosed was using those innards to communicate with a central health monitoring station. So there is only, there was only disclosure of health monitoring functions. The claim is to a multipurpose device. And specifically when you read the specification in context, the claim is to what we would think of as a more advanced cell phone, like a smartphone type device where you're loading software onto that device, as opposed to a very specific hardware device for health monitoring. But it doesn't have to be a smartphone, right? It does not, no. It could just be one that makes a call outside to a location other than, let's say, a hospital or a clinic. Right. There needs to be some disclosure of some function other than health monitoring. Why isn't this finding enough then? Because it doesn't show that the inventors had possession of any idea beyond that of using it for health monitoring. So it's not about what's disclosed in terms of structure. It's a question of what's disclosed in terms of function? I mean, I think it's, the multipurpose device is seen as a functional thing, but I think, I mean, even if we want to look at the structure, there doesn't, there's not structure disclosed that would indicate that the inventor was thinking about making a phone call to somebody else. The, I mean, if we look at the disclosure. That's not the, the question is whether the inventor had possession. Right. Whether the inventor had possession and actually invented the claimed invention. And the claimed invention is to a multipurpose device. And if there's a finding that the device could make a phone call, why isn't that sufficient to show possession? I guess, I guess the question is one of the relationship between function and possession. Right. So the finding was that you would, because the law also says that if you are taking something and you have to make it obvious, that's not enough. It has to be something that is actually disclosed in the specification by the inventor. But it is disclosed under this finding made based on Dr. Brin's testimony. You seem to put a different analysis, not whether something is disclosed, but whether the inventor understood the use, the possible use of what it has, what has been disclosed. Am I right? I just want to understand the issue. That doesn't say how. Sure. I mean, what is disclosed is what is actually disclosed in the 1999 application is the innards of like communication device in which you can call a clinician. Like if we look at, for example, you know, figure four on 1581 or, you know. Well, but they accepted Dr. Brin's testimony that, and maybe I'm misunderstanding what his testimony was, that the application had the cellular and wireless circuitry that enabled it to be used as a cellular phone. What does that mean? Right, but it doesn't mean that it was actually ever used in that way or that it was. Was it capable of being used in that way? Well, is what was disclosed in the spec capable of being used as a cellular phone? I mean, it depends on, I guess, what you are talking about as a cellular phone. Is it capable of being used as a general purpose phone where you could make calls to any person that you wanted freely? We don't know that. Just a cell phone, just to make a call. You know, what we see, what they show in the, you know, GIVA picture. Well, the board makes a finding that he credibly, we find he credibly established that. Okay, so the monitoring apparatus of the 136 application could be used to make and receive cellular phone calls for other non-health monitoring purposes. So if the board found that, it must have concluded that the legal test is not whether you've disclosed something that could be used, but rather what, that you disclosed its actual use for that purpose? What more is needed? Somebody keeps talking about what the inventor knew. I don't know how we evaluate that. Right, so what was actually possessed, what was actually disclosed. So what was disclosed in the application, the only thing that the application disclosed was that you would have this very specific monitoring device and that it would have the ability to call a health monitoring system, a center. It does not disclose the ability to make calls. It doesn't say that that would be, that's what you'd use it for. It only discloses that you would be using it for health monitoring functions. So that is, what about the, is that leading us to an inherency argument? Where the, it could be used, you just didn't state that it would be used. I mean, it could be used for numerous things, maybe. And are you saying the standard then is it could be used to do the following six things, but since he only disclosed one use, then we're limited to that. I don't think we're going to an inherency argument because the device that was disclosed, a specific hardware device for health monitoring, is not inherently a general purpose cell phone. The claims require a multipurpose device, which is dedicated to something other than health monitoring. So the health monitoring device of the 99 application would not inherently become a general purpose device. Well, again, I'm just trying to understand your position. You're saying that if it could be used to receive cell phone calls for other things, but he didn't disclose that it was going to be used for that purpose, then the disclosure is not sufficient. Yes, I agree. I mean, that's the only way I can reconcile what the Board is saying. Right, I agree, because I think the possession requirement is higher than that, because it says it's not something that would be obvious, or it's not something that, you know, you would need a person of ordinary skill in the arts to understand. It's something that is disclosed in the specification that the inventor had possession. Reading this, wouldn't a prosecutor look at this and say, I can use that device to make a telephone call? I don't think the person of ordinary skill in the arts would think that the inventor invented a device that could make a cell phone call. I'm saying, that's not what I'm asking. I'm asking a prosecutor reading the specification. A person of ordinary skill in the arts reading the specification, seeing that there might be some communication parts, might recognize that, yes, it's possible that a call could be made, but there's no disclosure at all. Why isn't that possession? Because that's not what the inventor had thought of. That's not what the inventor actually invented. Isn't that what the Board is saying on page five? It says, his testimony is supported by sound scientific reasoning and factual evidence that the application had a cellular and wireless circuitry that enabled it to be used as a cellular telephone. I mean, that's evidence. Right. But then the Board later says on page seven that the inquiry is not whether it could be used as a general purpose phone. The question is whether the inventor had possession of that concept. But if a prosecutor looks at the invention and sees it there, what else is needed? I don't think that's what they would see. When you read the 99 application, you see that it's a dedicated health monitoring device. I mean, if you look at the later 2004, that was a stark departure from what was disclosed in the 99 application. The 2004 application talks about the previous ones. If we look at APPX 30 on column three, starting at lines 44, it talks about various methods and devices for monitoring the health of a person or known that use special hardware. And here, now we're harnessing a cell phone to put software on a cell phone, which is different than these specialized health monitors. And it specifically mentions the previous 99 application on line 64 as one of the previous methods. So there is a stark departure here from what the 2004 application is disclosing and claiming as opposed to what was done in 99. Are there further questions? No, thank you. Thank you. So the disclosure only discusses using the device in terms of a contacting the health provider, a clinic. And that's the only thing that the disclosure deals with. That's the only thing that's expressly spelled out in the disclosure, correct? But the evidence in the record shows that the device can also be used to make a cell call. That's correct. That's what Dr. Binns testified to and what the board adopted. Correct. If we find in this case that capability or the function indicates possession, to what extent is that contrary to our existing case law? I don't think it is because it's unique to the claim construction and the limitation here because of the functional limitation. It's consistent within Ray Reynolds and cases that deal with these kind of functional limitations. So it's not inconsistent with the case law. In fact, it's consistent with it to find that a functional claim limitation like this. When a person is going to understand that that functionality exists. Would that make any difference? Would it make a difference in your argument if we didn't have Dr. Binns' declaration? I think so because that's what the board relied on and adopted. So if that had not been a fact finding here, I think this case would be a bit different. That's correct. I haven't gone through that entire analysis, but certainly that was adopted by the board and is one of the reasons why the board's decision should be reversed under the correct standard. I'd like to just briefly point to, you had asked a question about where was Dr. Binns' testimony about what the inventors would have possessed. And my colleague pointed me, there's actually two more explicit statements. One at A1760, paragraph 56, where he states that the inventors would have, that a person would have understood that the inventors possessed the non-health monitoring function. And there's another one in his second declaration as well, which is at A1949, paragraph 4. Similar statement. Yeah, I had your line there. I thank both parties. The case is submitted. That concludes our proceedings.